IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| M.I.K.S., L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13-CV-00545-W-DGK |
| | ) | |
| K-MART CORPORATION, | ) | |
| | ) | |
| Defendant/Counter-claimant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
K-MART'S MOTION TO DISMISS**

This lawsuit arises out of a commercial lease agreement between Plaintiff M.I.K.S., L.L.C. ("M.I.K.S.") and Defendant K-Mart Corporation ("K-Mart"). Plaintiff seeks reformation of the lease (Count I) and damages for breach of contract (Count II) and waste (Count III).

Pending before the Court is Defendant's Motion to Dismiss (Doc. 4) brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant alleges that the Complaint fails to state a claim upon which relief can be granted because Plaintiff's claims are barred by the statute of limitations, the doctrine of ripeness, and the parties' written agreement.

The Court finds that the statute of limitations bars the claims for waste and contract reformation, but that Plaintiff. has properly stated a breach of contract claim on a single ground. The motion is DENIED with respect to a portion of Count II, but GRANTED on all other claims.

**Standard of Review**

A complaint must meet two conditions to survive a Rule 12(b)(6) motion. First, it must "contain sufficient factual matter, accepted as true, to state a claim to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the complaint need not make detailed factual allegations, "a Plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008).

Second, the complaint must state a claim for relief that is plausible. *Iqbal*, 556 U.S. at 678. A claim is plausible when "the court may draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id*. In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the Plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

Finally, in considering a Rule 12(b)(6) motion based on the running of a statute of limitations, the court may grant the motion only if it is clear from the face of the complaint that the cause of action is time-barred. *Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011).

**Factual Background**

Construing the Complaint liberally and drawing all reasonable inferences in M.I.K.S.'s favor, the Court finds the facts to be as follows for purposes of resolving the pending motion to dismiss:

For several years, Plaintiff M.I.K.S. has leased real property in Kansas City, Missouri to Defendant K-Mart to operate a retail store. Around 1999, the parties began negotiating the terms of a new lease. The parties agreed that M.I.K.S. would pay all real estate taxes and insurance costs, and K-Mart would reimburse M.I.K.S. for part of these expenses. Although the parties discussed one particular method for determining K-Mart's dues ("the draft formula"), because of a scrivener's error the lease as executed contained a different formula ("the final formula") which was less favorable to M.I.K.S. The lease provision containing the final formula does not

2

express the mutual intent of the parties, and all drafts of the lease, including the final version, were written by K-Mart's personnel.

Notwithstanding the language in the final lease, since the parties signed it in June 2001 M.I.K.S. has calculated its property tax and insurance expenses using the draft formula. K-Mart paid these invoices without question until early 2011, when it became aware that the final formula in the lease was different. K-Mart then refused to pay under the draft formula.

Further friction between the parties arose concerning K-Mart's construction activities on the property. The lease permits K-Mart to demolish 12,400 square feet of the property in order to expand K-Mart's store. After the parties executed a minor amendment to the lease in May 2005, K-Mart destroyed a total of 20,400 square feet of retail space, or 8,000 square feet more than what the lease authorizes.[1] In addition, the lease requires K-Mart to "diligently prosecute construction of the Expansion" once it has commenced destruction. K-Mart, however, has made no effort to rebuild on the site. M.I.K.S. contends this failure to rebuild has damaged its reversionary interest by more than $970,000.

Plaintiff M.I.K.S. filed this lawsuit on April 24, 2013. Defendant K-Mart now moves to dismiss all counts in the Complaint.

**Discussion**

**I.    The statute of limitations bars Plaintiff's reformation claim.**

In Count I, Plaintiff seeks reformation of the parties' contract, alleging that the final formula written in the lease is not what the parties intended it to be. Defendant contends that the

---

[1] K-Mart reads the Complaint as alleging that the demolition occurred in 2001. A close reading belies that interpretation. The Complaint states that K-Mart "promptly demolished 20,400 square feet of retail space upon execution of the Lease." The Complaint elsewhere defines "Lease" as "[t]he Amended and Restated Lease as amended by the First Amendment to Amended and Restate Lease," executed in May 2005 and attached as Exhibit C. The 2001 lease which K-Mart references in its Suggestions in Support of Motion to Dismiss (Doc. 5) is called in the Complaint the "Amended and Restated Lease," attached as Exhibit B.

ten-year statute of limitations on this claim expired before Plaintiff brought this lawsuit in April 24, 2013. The issue for the Court is whether the claim accrued before April 24, 2003. If so, it is time-barred.

The statute of limitations for reformation in Missouri is ten years. Mo. Rev. Stat. § 516.110. Actions under § 516.110 accrue not when the wrong is complete, but when the resulting damage is both "sustained" and "capable of ascertainment." *Id.* § 516.100.[2] Damage is sustained and capable of ascertainment when the damage can be discovered or made known, even though the amount of damage is unascertained. *M & D Enters., Inc. v. Wolff*, 923 S.W.2d 389, 394 (Mo. Ct. App. 1996). Damage is capable of ascertainment when a reasonable person using reasonable diligence could have discovered it. *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 580–84 (Mo. 2006).

When damages are "sustained" and "capable of ascertainment" under Missouri law in the context of a reformation claim is somewhat unclear. When the contract provision implicated by the litigation is unambiguous, the injury is sustained and capable of ascertainment when the contract is signed. *See Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 131 (Mo. Ct. App. 2006); *Nuspl v. Mo. Med. Ins. Co.*, 842 S.W.2d 920, 921–22 (Mo. Ct. App. 1992). Alternately, when the contract provision at issue is unclear and requires interpretation, the injury is sustained and capable of ascertainment once the provision has been clarified and is known to be injurious. *Husch & Eppenberger*, 213 S.W.3d at 131 (holding the statute of limitations had not run on the plaintiff's reformation claim because the injury—an adverse interpretation of a

---

[2] Defendant cites *Stark v. Zehnder*, 102 S.W. 992, 996 (Mo. 1907), for the proposition that the limitations period for a contract reformation claim begins running as soon as the mistake is made, which Defendant contends is when Plaintiff signed the lease in 2001. *Stark*, however, rests on a previous version of § 516.100 that does not contain the "sustained" and "capable of ascertainment" requirements. *Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 128–29 (Mo. Ct. App. 2006) ("Given the change in the statutory language since 1907, the precise holding in *Stark* is no longer fully controlling.").

certain phrase in the contract—was not ascertainable until a court had preclusively and unfavorably decided the phrase's meaning).

Here, Plaintiff alleges that the parties signed a contract which contained an unambiguous provision—the final formula—which did not reflect the parties' true intentions and was included in the contract because of a scrivener's error. Even though the final formula was included in the lease by mistake, the formula is not ambiguous. Thus, Plaintiff incurred its injury in this case when it signed the final draft of the lease, which was April 24, 2001. The injury was also capable of ascertainment at this same time because the discrepancy between the draft formula and the final formula was immediately noticeable by reviewing the lease, and a reasonable person using reasonable diligence would have read the lease before signing it. *See Powel*, 197 S.W.3d at 582; *Nuspl*, 842 S.W.2d at 921–22. The fact that neither party actually discovered the error until 2011 is irrelevant. Accordingly, the Court holds the limitations period began accruing on April 24, 2001 and expired on April 24, 2011, well before Plaintiff filed its Complaint.

The Court GRANTS the motion to dismiss Count I with prejudice.

**II.     The Complaint states a claim for breach of contract.**

Count II of the Complaint alleges a breach of contract claim. Specifically, Plaintiff claims that Defendant breached the lease agreement in three different ways: (1) by demolishing more retail space than the lease permitted; (2) by refusing to reimburse Plaintiff for taxes according to the draft formula; and (3) by not diligently rebuilding a portion of the demolished shopping center. Defendant argues that the first and third claims are barred by the statute of limitations, and the second and third fail to plead the requisite elements. The Court holds Plaintiff has successfully plead a breach of contract claim for not diligently rebuilding.

### A. The breach of contract claim for demolishing more space than the lease permits is time-barred.

The statute of limitations for breach of contract is five years and accrues when the injury is sustained and capable of ascertainment. Mo. Rev. Stat. §§ 516.100, 516.120. Plaintiff alleges that the lease permitted Defendant to demolish 12,400 square feet of retail space. But shortly after the parties executed the 2005 amended lease, Defendant demolished 20,400 square feet—8,000 more square feet than the lease authorizes. By so doing, Defendant violated the lease.

This injury—the destruction of the property—was sustained immediately. It was also immediately capable of ascertainment because it was easily visible, and a reasonable person using reasonable diligence could have quickly discovered it. *See Powel*, 197 S.W.3d at 582. Because this breach occurred in 2005, the statute of limitations expired well before Plaintiff commenced this suit. A breach of contract action on this ground is thus time-barred, and this claim is dismissed with prejudice.

### B. Plaintiff cannot state a breach of contract claim for Defendant's failure to pay under the draft formula.

Plaintiff also alleges that Defendant's refusal to pay according to the draft formula breached the lease. Defendant argues Plaintiff has failed to plead an essential element of a breach of contract claim, namely that the Defendant actually breached the contract. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010).

The Complaint alleges that Defendant did not pay the amount that Plaintiff expected to receive. But as a matter of law there is a difference between what Plaintiff expected to receive under the lease and what Plaintiff was entitled to receive under the lease. Plaintiff expected to be reimbursed under the draft formula, but was entitled to be reimbursed under the final formula. So the breach of expectation is not a breach of contract. In fact, Plaintiff admits in the Complaint

that Defendant reimbursed it according to the formula that is actually in the lease. Thus, if anything, Defendant's refusal to pay in 2011 better complied with the contract than its previous payments made under the draft formula.

Because the alleged facts fail to state a claim for breach of contract, the breach claim based on underpayment of taxes is dismissed with prejudice.

### C. It is not clear from the face of the Complaint that Plaintiff's breach of contract claim alleging failure to diligently rebuild is time-barred.

Finally, the Complaint alleges that the lease permitted Defendant to raze part of the property to expand its store on the condition that Defendant "diligently prosecute construction of the Expansion." Plaintiff alleges Defendant demolished building space sometime after executing the May 2005 lease amendments, but has yet to begin construction of the expansion.

#### 1. The statute of limitations does not bar this claim.

Again, the parties disagree on whether the five-year statute of limitations has run on this count. A cause of action begins to accrue once the injury is capable of ascertainment. The injury here, however, was not clearly capable of ascertainment before April 2008; at least, it is not clear from the face of the Complaint that it was clearly ascertainable in April 2008.

Like the phrase "the law firm" in *Husch & Eppenberger*, the term "diligently prosecute" as used in the lease is ambiguous enough that the Court cannot say as a matter of law that Plaintiff could have ascertained Defendant's breach immediately after the demolition occurred. *See* 213 S.W.3d at 127–28. Indeed, since much of construction work is non-visible—meeting with architects, revising blueprints, waiting for approval, etc.—it is plausible that a reasonable landlord using reasonable diligence could have believed Defendant was diligently prosecuting construction of the Expansion despite not seeing any visible progress. Thus, Plaintiff could

7

plausibly not have ascertained until April 2008 that Defendant had breached this portion of the contract. *See M & D Enters., Inc.*, 923 S.W.2d at 394. Because it is not clear from that face of the Complaint that the action is time-barred, *Joyce*, 635 F.3d at 367, the statute of limitations has not yet run on this claim.

### 2. Plaintiff properly plead the elements of this claim.

Of course, the Complaint must still plead all the elements of breach of contract, which are: (1) a valid contract existed; (2) the plaintiff performed pursuant to the contract; (3) the defendant breached the contract; and (4) the breach injured the plaintiff. *Keveney*, 304 S.W.3d at 104.

The Complaint satisfies the first element by alleging that the parties signed a lease which concerned the demolition and reconstruction of this site. The relevant portion of the lease, Article 38, obligates Plaintiff to cooperate with Defendant on the administrative side of the construction process only, which Plaintiff claims it has done, so Plaintiff has sufficiently pled the second element. On the third element, Plaintiff claims that Defendant has never reconstructed on the site, thus there is a breach. Finally, the Complaint states that the loss of 20,400 square feet of building space has reduced Plaintiff's reversionary interest in the shopping center by more than $970,000, thus Plaintiff has been damaged. Given these assertions, the Complaint states a claim upon which relief could be granted.[3]

The Court DENIES the motion to dismiss Count II on the basis of failing to diligently prosecute construction on the site.

---

[3] As Defendant points out, Article 11 of the lease authorizes it to "make such alterations, additions or changes, structural or otherwise, in and to [Defendant's] Building, . . . as it may deem necessary or suitable." And a trier of fact may eventually find that this language clearly authorized Defendant to destroy all 20,400 square feet or to never rebuild on the site.

### III. The action for waste is ripe but time-barred.

Finally, Defendant argues Plaintiff's claim for waste, Count III, should be dismissed because the claim is both unripe and barred by the statute of limitations.

By statute, Missouri law provides that:

> If any tenant, for life or years, shall commit waste during his estate or term, of anything belonging to the tenement so held, without special license in writing so to do, he shall be subject to a civil action for such waste, and shall lose the thing wasted and pay treble the amount at which the waste shall be assessed.

Mo. Rev. Stat. § 537.420. Plaintiff alleges the lease permitted Defendant to demolish 12,400 square feet of the property for the purpose of expanding Defendant's store. Defendant demolished 20,400 square of building space, but never built an expansion. Plaintiff argues that Defendant's on-site demolition activities have injured Plaintiff's reversionary interest and constitute waste.

#### A. The waste count is ripe for adjudication.

Defendant contends that since the lease will run for approximately another twelve years, it has ample time to improve the site and return the land without damaging Plaintiff's reversionary interest. On this basis, Defendant argues, the issue is not ripe and the Court lacks jurisdiction.

The United States Constitution restrains federal courts from hearing cases that are not yet "ripe." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). A court determines ripeness by analyzing two factors: (1) the "fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Id.* at 149.

An issue is fit for judicial determination if the dispute is not "hypothetical or speculative." *Neb. Public Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). A case is less likely to be ripe if it requires further development or involves

9

"contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 674 (8th Cir. 2012). Here, Plaintiff alleges both past and ongoing waste: Defendant's destruction in 2005 of more square footage than permitted by the lease, and the ongoing failure of Defendant to improve the demolished land. Although Defendant still has time to remedy the waste before the lease ends, Defendant has already damaged Plaintiff's reversionary interest. Section 537.420 creates a cause of action upon the commission of waste, with no requirement that Plaintiff wait until the end of the lease term to file suit. Indeed, one remedy permitted by the statute is "los[ing] the thing wasted"—that is, immediately forfeiting the property—a remedy not even possible if a prospective plaintiff had to endure the waste and postpone suing until the end of the lease. Accordingly, the Court holds the alleged damage has already occurred and is not hypothetical or speculative. *See Neb. Public Power Dist.*, 234 F.3d at 1038.

The second factor a court examines for ripeness is the hardship to the party of withholding consideration. This hardship encompasses both a traditional notion of damages and the "heightened uncertainty and resulting behavior modification that may result from delayed resolution." *Id.* Here, Plaintiff's Complaint alleges that withholding consideration would indeed bring it significant harm. Plaintiff alleges a loss of $970,000, a significant sum of money. Plaintiff must also tolerate the uncertainty of whether it will have difficulty restoring the site to its original condition at the end of the lease, regardless of whether Defendant ultimately returns the premises to Plaintiff "in good order and in reasonable condition" as the lease requires. For these reasons, withholding consideration of the waste issue would impose significant hardship on Plaintiff. *See id.* Consequently, the action is ripe, and the Court may adjudicate this claim.

### B. The statute of limitations bars Plaintiff's waste claim.

Defendant argues that even if it committed waste, the statute of limitations has run on Plaintiff's claim. Under Missouri law, actions concerning statutory liability for waste must be brought within five years of when the injury is sustained and capable of ascertainment. Mo. Rev. Stat. §§ 516.100, 516.120. The issue here is when the statute of limitations began to run.

Here, Plaintiff alleges that the wrong—Defendant's destruction of more retail space than the lease allowed—occurred "promptly after execution of the Lease" in 2005. Thus, the damage was sustained in 2005. *See M & D Enters., Inc.*, 923 S.W.2d at 394. The injury was also capable of ascertainment in 2005. Although the Complaint does not state when Plaintiff became aware of Defendant's waste, the Court holds that a reasonable commercial landlord exercising reasonable diligence should know within three years if a tenant has demolished 20,400 square feet of the landlord's property. *See Powel*, 197 S.W.3d at 582. Although the landlord might not know the exact extent of the damage, at the very least, such a landlord should at least be able to discern that the property has been damaged.

The Court finds that any damage Defendant dealt to Plaintiff's reversionary property interest by razing retail space was sustained and capable of ascertainment at the moment of demolition, which occurred sometime in 2005. Accordingly, the five-year statute of limitations expired before Plaintiff filed its Complaint in April 2013.

The Court GRANTS the Motion to Dismiss Count III with prejudice.

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss (Doc. 4). Counts I, III, and portions of Count II are DISMISSED

WITH PREJUDICE. The motion is denied with respect to that portion of Count II alleging Defendant breached the lease by falling to diligently rebuild.

**IT IS SO ORDERED.**

    /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: January 27, 2014